MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

SUSAN KNIGHT (CABN 209013)
MICHELLE J. KANE (CABN 210579)
Assistant United States Attorneys

  150 Almaden Boulevard, Suite 900
  San Jose, CA 95113
  Telephone: (408) 535-5061
  Fax:  (408) 535-5066
  E-Mail: susan.Knight@usdoj.gov
          michelle.kane3@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE  DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ROOSEVELT ANDERSON, JR.,<br><br>    Defendant. | No.  CR 09-01015 EJD<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:  June 18, 2012<br>Time:  1:30 p.m. |

## INTRODUCTION

On February 10, 2012, a jury found defendant Roosevelt Anderson (hereinafter "the defendant") guilty of one count of criminal copyright infringement, in violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1).

The government has reviewed the Presentence Report ("PSR") and has no objection to the content of the report.  Probation Officer Lori Gunderson recommended that the Court sentence the defendant to 24 months.  After reviewing the instant offense, the defendant's criminal history, and Officer Gunderson's sentencing recommendation, the government believes that a sentence of 41 months imprisonment, which is the low end of the guideline range, is a

reasonable sentence.

## I.     BACKGROUND

The facts of the case are accurately reflected in the PSR, and the Court presided over the trial and is well versed in the evidence relating to the charge. Therefore, outlined below is a brief recitation of the facts.

In February 2009, the United States Postal Inspection Service was contacted by Adobe Systems regarding the sale of counterfeit Adobe software on PriceGrabber.com. Adobe informed the Inspection Service that an unknown individual was selling counterfeit copies of Adobe Photoshop CS3 software through PriceGrabber.com under the seller identification of "moneyworld123" and Photostar Productions. Adobe also reported that its payment for the undercover purchase it conducted was processed through Google Checkout, an online payment processing service.

Postal Inspector Christopher Morris initiated an investigation, and examined the software from Adobe's undercover purchase. The software consisted of a compact disc with a white slip of paper attached that stated: Adobe Photoshop CS3 Extended Complete Software Package, Manufacture Part: 29400084, UNSPSC: 43232102. The disc was accompanied by a "money back guarantee" certificate and installation directions. Christopher Stickle, Adobe's Anti-Piracy Enforcement Manager, informed Inspector Morris that the disc was counterfeit because the software was burned into to it, rather than pressed, and the serial number was invalid. Adobe uses a high-end manufacturing process to press the software into discs, and doesn't use paper labels, and includes software in boxes with instruction manuals.

Inspector Morris obtained records from PriceGrabber.com and Google Checkout. Through the PriceGrabber.com records and commercial post office records, he identified the defendant as "moneyworld123" and confirmed that he sold purportedly genuine copies of Adobe software on PriceGrabber.com. The defendant advertised the software as follows:

> Complete Adobe Photoshop CS3 FULL Version; Fully Upgradable; Not Trial/Demo or Educational Software; CD Only (Envelope); NO Manual or Packaging; Help Manual Built-into CD if needed; Quick Immediate Shipment; Fully Registerable; 30 Day Money Back Guarante (sic)

Inspector Morris also learned from Google Checkout records that the defendant, from approximately February 6, 2008 through February 5, 2009, received over $70,000 from over 300 transactions involving the sale of unauthorized copies of Adobe software. Furthermore, Inspector Morris learned that the defendant maintained a website called "Anderson9000.com" to sell software. In June 2009, Inspector Morris made an undercover purchase of Adobe's Fireworks CS3 software from Anderson9000.com. Mr. Stickle later confirmed that software was counterfeit.

Inspector Morris interviewed numerous individuals who purchased Adobe Photoshop CS3 from the defendant on PriceGrabber.com. Several customers, including the individuals who testified during the trial, told Inspector Morris that the software looked like counterfeit software because it lacked the appropriate Adobe logos on it. In addition, several customers emailed "moneyworld123" to inform him that the software looked illegal, and returned it for a refund.

## II. THE SENTENCING CALCULATION

### A. Calculation of the Applicable Sentencing Guidelines.

Under United States v. Booker, 543 U.S. 220 (2005), the Supreme Court ruled that the federal sentencing guidelines are "effectively advisory," and that "[t]he district court, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 245-46. See also 18 U.S.C. § 3553(a)(4). In the instant case, the starting place is the calculation of the applicable guideline range. The government agrees with Probation Officer Gunderson's guideline calculation, which is as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level:<br>(U.S.S.G. § 2B5.3(a) -<br>copyright infringement) | 8 | |
| b. | Specific Offense Characteristics:<br>(U.S.S.G. § 2B5.3(b)(1)(B) - infringement<br>amount based on loss table in § 2B1.1 -<br>loss is between $200K and $400K) | +12 | |
| | (U.S.S.G. § 2B5.3(b)(3)(A)) | +2 | |
| c. | Adjusted Offense Level: | 22 | |

An adjusted offense level of 22 when indexed with Criminal History Category I results in

a sentence of 41 to 51 months.

**B. The Loss Amount Should Be Based Upon the Retail Price of the Infringed Items.**

The offense level for a copyright violation is largely determined by the loss amount. See U.S.S.G. § 2B5.3(b)(1). The Sentencing Guidelines provide a number of ways of calculating the loss in a copyright case. In this case, the government evaluated the Commentary to U.S.S.G. § 2B3.5 and believes that Note 2(A) justifies the use of the retail price of the infringed item (i.e., the manufacturer's suggested retail price for a legitimate version of Adobe software):

> The infringement amount is the retail value of the infringed item multiplied by the number of infringing items, in a case involving any of the following:
>
> (I) The infringing item (I) is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item; or (II) is a digital or electronic reproduction of the infringed item.
>
> . . .
>
> (v) The retail value of the infringed item provides a more accurate assessment of the pecuniary harm to the copyright or trademark owner than does the retail value of the infringing item.

As to Note 2(A)(I) subsection II, Christopher Stickle, a former Adobe employee, testified during the trial that the software that the defendant sold was an exact digital copy. In addition, the evidence at trial demonstrated that the defendant used a key generator to make serial numbers for the software. Furthermore, the defendant's witnesses at trial testified that the software they purchased worked properly. While it is debatable whether the defendant's customers purchased his discounted illegitimate copies in lieu of purchasing full price authorized versions of the software, the fact remains that the defendant illegally copied Adobe's product for his own personal gain. He made advertised the software as an Adobe product, placed Adobe's name and listed the copyright symbol " © " next to Adobe on a slip of paper affixed to the disc. He also included other intellectual property such as "plug-ins" on the disc that a customer could access if he gave the defendant a positive sales review. Given these circumstances, the government believes that the appropriate loss amount should be based up the retail value of the software, not the defendant's profit. Adobe reported the retail price of Photoshop CS3 Extended is $999.00, and Photoshop CS3 is $649. The PriceGrabber and Google Checkout records indicate that the

defendant sold approximately 310 copies of Photoshop CS3 Extended and 46 copies of Photoshop CS3 with a value of approximately $247,144. This amount results in a specific offense characteristic of 12 levels added to the base offense level. See U.S.S.G. § 2B1.1(b)(1)(G).

**C. The Defendant Should Not Receive Acceptance Points.**

The government has reviewed the defendant's request for a two point reduction for acceptance of responsibility, including his statement to Officer Gunderson. The government has also reviewed U.S.S.G. § 3E1.1(a), and its Commentary. The government agrees with Officer Gunderson's assessment that the defendant should not receive the two-point reduction. This is not a situation as discussed in Commentary, Note 2(A):

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to the applicability of a statute to his conduct). In each instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

In the instant case, the defendant did not accept responsibility for his conduct and proceeded to trial to preserve a novel legal issue. He did not dispute that he was "moneyworld123," and stipulated to the admission of business records, but he vigorously claimed that under his reading of the Copyright Act, he was entitled to sell "back-up" copies of Adobe software. The defendant asserted at trial that he read the Copyright Act, and sold "back-up" copies of software. However, the evidence at trial demonstrated that he defendant never advertised the software as "back-up" or archival copies, and he never communicated that fact to his customers. Nor did the defendant contact Adobe to discuss his desire to sell their software. His willfulness was the sole issue in dispute at trial, and the jury rejected the defendant's verison of events. Accordingly, he should not receive a two-point reduction.

**III. GOVERNMENT'S POSITION ON SENTENCING**

After considering the Sentencing Guidelines and factors outlined in 18 U.S.C. § 3553(a), the government believes that a sentence of 41 months, which is the low-end of the guideline range is a reasonable and appropriate sentence.

**A. Factors to Be Considered in Imposing Sentence**

1. The Nature and Circumstances of the Offense

The defendant sold unauthorized copies Adobe software over a brief period of time, yet made a substantial amount of money. Intellectual property offenses such as criminal copyright infringement are not victimless crimes. As Diana Olin, Adobe's Compliance Coordinator stated in her letter,

> [E]ach time a consumer acquires counterfeit or pirated software, our brand is deteriorated and relationship with customers weakened. The negative experience of customers unintentionally acquiring counterfeit and pirated software may cause them to have such a damaging association with our software, that they may choose to go to a competitor or perhaps abandon creative software in general. . . It also strains our relationship with legitimate resellers who likewise suffer from illegal activities such as that of the [defendant].

2. The History and Characteristics of the Defendant

In the PSR, the defendant described growing up in a loving home and being involved in church activities. He has good friends who discussed his positive attributes in letters to the Court. However, the defendant has had his share of family problems. He had to cope with the death of his father two years ago. He also had to deal with the fact that his older sister was sexually abused by their father, as reported to Officer Gunderson by his sister, Nichelle Thomas. See PSR, ¶¶ 49.

In addition, the defendant appears to be an intelligent man despite not having a college or other vocation degree. He has taught himself several important skills involving electronics, computer repair, and photography. Rather than use these skills to find a legitimate way to earn a living, he chose to take a path of making easy money by illegally copying Adobe software.

Unfortunately, this not the defendant's first offense. He has suffered convictions for several misdemeanors involving embezzlement, larceny, disorderly conduct, and a felony conviction for a complex mail fraud scheme. See PSR, ¶¶ 39-42. As Officer Gunderson points out in her report, these offenses do not count towards criminal history points, but demonstrate that the defendant is getting more sophisticated in his financial schemes. Accordingly, a sentence of imprisonment is necessary to deter the defendant from engaging in further criminal behavior.

//

3. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

A sentence within the guidelines range would reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

4. The Need for the Sentence to Afford Adequate Deterrence

A sentence within the guideline range would serve as an important deterrent not only to the defendant but also to individuals who are currently involved in copyright infringement. It would also deter those who would consider committing such crimes. The defendant committed this offense over a relatively short period of time and made a substantial amount of money. His customers repeatedly put him on notice that his conduct was illegal, and he disregarded their comments by continuing to sell unauthorized copies of Adobe software. Therefore, a sentence that includes a period of incarceration is appropriate as a deterrent.

5. The Need to Protect the Public from Further Crimes of the Defendant

Intellectual property offenses such as this case threaten the economic health of corporations and their employees. While Adobe is a multinational computer software company that employs nearly 10,000 people, this offense affects real people with real jobs. The company supports its employees and strengthens our economy through its sales of computer software, and payment of state and federal taxes. Adobe deserves protection from individuals illegally copying and selling its products. A sentence of imprisonment at the low end of the guideline range will impress upon the defendant the seriousness of his offense and deter him from engaging in similar conduct.

6. The Need to Provide the Defendant with Educational or Vocational Training

Although the defendant informed Officer Gunderson that he developed specialized skills on his own in the area of electronics, computer repair, and photography, his employment history is sporadic. See PSR, ¶¶ 61-68. He might possibly benefit from receiving some type of formal vocational training.

IV. **ASSET FORFEITURE ISSUES**

The parties have reached an agreement regarding forfeiture, and will file a stipulation on

the day of sentencing. Specifically, the defendant will agree to forfeit a Dell laptop computer, service tag number 2WFTRC1, Maxtor External Hard Drive, serial number 2HAPT8VM, and compact discs with unauthorized reproductions of software. The government will return to the defendant a number of compact discs that have genuine software or contain personal materials. In addition, the government will return a Toshiba laptop computer and Microsoft Windows 7 software to the defendant's friend, Chris Parks, who provided an affidavit attesting to his ownership of these items.

## V. RESTITUTION

Restitution is mandatory for any offense against property under Title 18 offenses. See 18 U.S.C. § 3663(A). In this case, the government provided to Probation Officer a chart, which was an exhibit at trial, documenting the defendant's sales of unauthorized copies of Adobe software as well as a letter from Diana Olin, Adobe's Compliance Coordinator. The records indicate that the defendant sold 310 copies of Photoshop Creative Suite 3, which has retail value of $649.00, and 46 copies of Photoshop Creative Suite Extended 3, which has a retail value of $999, which results in a financial loss approximately $247,144.

## VI. CONCLUSION

Based on the foregoing, the government respectfully requests that the Court sentence the defendant to 41 months imprisonment followed by two years of supervised release. The Court is required to impose a $100 special assessment.

DATED: 6/12/12

Respectfully submitted,

MELINDA HAAG
United States Attorney

_____/s/_____
SUSAN KNIGHT
MICHELLE J. KANE
Assistant United States Attorneys